MARY CLARKE and Others *v.* ROSANNA DOUGAN and Others.

1. An assessment of warranted land for a disseising settler, of a less quantity than is called for by the warrant and survey, if made by his procurement, or even with his knowledge and acquiescence, will lose to him his constructive possession, by detaching it from the land-marks that had sustained it.

2. To acquire title to the whole tract by the statute of limitations, as against the warrantee, such settler must always have evinced, by declarations and acts, an unintermitted purpose to hold by the lines on the ground.

ERROR to the Common Pleas of Butler.

*Oct.* 2. This was an action of ejectment brought by Rosanna Dougan and others, heirs and legal representatives of Edward Kelly, deceased, against Mary Clarke and others.

The plaintiffs' case was this. Edward Kelly entered into the tract in controversy, in 1804, as an actual settler, and continued his settlement and improvement from his entry to his death, which occurred some time before 1837. At the time of his entry the tract was a warranted one of 300 acres. It was in evidence that he had at various times asserted to his neighbours that he intended to claim the whole of it, and that in some four or five instances he had cut timber on different parts of the tract. His improvements were extended to about thirty acres. They were confined to one side of the tract, or nearly so; after his death a line was run by Mr. Dougal, who entered and surveyed the land in 1837, on behalf of those holding the legal title, and set off the portion of the tract embracing Kelly's clearing, to which Dougal deemed him entitled as an actual settler.

The defendants claimed under the warrant title. The warrant was issued to Thomas Bond on 4th March, 1793, and was surveyed on 7th October, 1794, by the surveyor of the district. By several mesne conveyances, and the will of Stephen Lowrie, the title became vested in Mrs. Lydia S. McClure, to whom a patent was issued on 18th October, 1843, and under whom the defendants

entered and held the possession, soon after the survey made by Dougal in 1837.

No dispute was raised as to the right of the plaintiffs to such part of the land as Kelly had been in the actual occupancy of for a period of more than twenty-one years, and the alleged possession of the defendants did not embrace any part of what had been allotted to him as his settlement right. But the defendants contended that Kelly could not extend his possession beyond the settled portion, he never having cleared beyond that point, and never having exercised any ownership over any other part of the tract. That his claim to the whole tract without some acts of possession, other than those proved, conferred no title upon him, and that another fact, which was in full proof, precluded the plaintiffs from extending their claim beyond the improvement and actual *pedis possessio* of Kelly. It appeared by the production of the tax-books that from 1816 to 1822, Kelly was assessed for only 100 acres, to explain or account for which no evidence was given by the plaintiffs.

The defendants, among others, presented the following points to the Court:

1. That whatever claims, as to the extent of his rights, may have been set up by Kelly in his conversations with his neighbours, and whatever may have been alleged by him at the time the surveys of the tract were making for the warrantee, the assessments for the years from 1811 till 1822, limited the extent of his claim to one hundred acres, and operated as an open, public, notorious disclaimer beyond the one hundred acres returned to the assessor; and is a complete bar, under the circumstances of the case, to any title or claim by the plaintiffs, under the statute of limitations, to the portion of the tract now in controversy.

2. That the presumption is, that the quantity of land returned by the assessor was furnished to him by Kelly, and that in the absence of all testimony upon the subject, such presumption cannot be contradicted, so that no error or mistake by the assessor can be inferred by the jury, and the assessment operates as conclusive of the extent of Kelly's claim at the time, and limits it to one hundred acres of the tract, and that, in this view of the case, the defendants are entitled to a verdict.

The Court below (BREDIN, President) charged as follows:

" If Kelly claimed two hundred acres at one time, and from 1817 to 1822 confined his claim to one hundred acres of the tract, as

assessed during those years, then the continuity of the claim would be broken, and the plaintiffs would not have a title under the statute of limitations, and would not be entitled to recover. The one hundred acres have already been run off, and the widow of Kelly is now in the possession of it. The case then turns on the fact, how did Kelly claim? did he always claim by the lines of the tract? If he did, and the assessment of the one hundred acres to him was not by his instruction and directions to the assessor, but he actually claimed the whole of the tract at the time he was assessed with the one hundred acres, then the plaintiffs would have the title under the statute of limitations, and be entitled to recover; for, although the assessments are very strong evidence of Kelly's limiting his claim to the one hundred acres, they are not conclusive. And if the assessment was made by the assessor, and Kelly was actually claiming the whole tract at the same time, he would acquire a title under the statute to the whole tract. The payment of taxes, although evidence of the extent of the claim, is not necessary to obtaining a title under the statute of limitations. The case then is narrowed down to this: Did Kelly limit his claim to the one hundred acres? did he return to the assessor but one hundred acres? If he did not limit his claim to the one hundred acres, and did not return it to the assessor, but claimed the whole of the tract, and was in the continued, undisturbed, notorious, hostile, adverse possession for twenty-one years, then the plaintiffs would be entitled to recover."

In direct answer to the points, the Court said that—

"1. If Kelly from 1811 to 1822 claimed but one hundred acres, then there can be no pretence of his acquiring a title under the statute of limitations. The law would be, if the facts are as stated in the question, as we are asked to charge you. But if the assessment was made by the assessor, without Kelly being called on, or returning but one hundred acres, and there was evidence that he claimed the whole tract, by the lines of the tract, then, notwithstanding the assessment, the statute of limitations would extend to the whole tract.

"2. The presumption is, that the quantity assessed was returned by Kelly to the assessor, and is very strong evidence that Kelly claimed but one hundred acres at that time, and this would break the continuity, and prevent the recovery of the plaintiffs, but it is not conclusive, and may be contradicted by evidence of his claim of the whole tract."

The verdict was in favour of the plaintiffs. The errors, upon

which the decision of this Court turned, were those assigned to the foregoing portions of the charge.

*Shaler*, for the plaintiffs in error.—The assessment of 100 acres operates an abandonment of the whole tract; he cannot allege a possession beyond that. It was notice to the warrant-holder of the extent of Kelly's claim; and that particularly after being assessed at 400 acres, and after the warrantee's claim was set up. There was no proof of any mistake. It was error to leave it to the jury whether there was any mistake in the assessment. The evidence was uncontradicted and conclusive. The assessment is the only evidence of the quantity of land assessed, and is conclusive, in the absence of contrary evidence, that it is all the land for which the party assessed paid taxes. To refer a fact to a jury, as to which there is no proof, is error: Evans *v.* Mengel, 6 Watts, 72; Evans *v.* Mengel, 1 Barr, 68; 8 Watts, 385; 3 Pa. R. 406; 2 Watts, 165; 5 W. & S. 82. There is no distinction between permitting a jury to infer a fact without proof, and to disregard uncontradicted evidence.

*Sullivan* and *Graham*, contrà.—Assessments are not conclusive evidence of the extent of claim in acquiring title under the statute of limitations. They are only *primâ facie* evidence of that, subject to be rebutted. Assessment is entirely *ex parte*, often made from the old lists, without inquiry on the land. The charge was too favourable to the defendants below.

The opinion of this Court was delivered by

GIBSON, C. J.—Kelly, under whom the plaintiffs claim, entered for himself, and, though as a settler, he was a disseisor; and the question has regard to the extent of his constructive possession. He procured no survey to be made by the deputy of the district, and he made no unofficial designation of his boundaries himself. The tract had been surveyed for a warrantee; and the doubt is whether he always evinced, by declarations and acts, an uninter-mitted purpose to hold by the lines on the ground. To the neigh-bours, he declared that he intended to hold the tract; and if his acts of ownership had corresponded with his words, the statute of limitations would have given it to him. But he suffered whatever he professed to hold, to be assessed, sometimes as fifty, sometimes as a hundred, sometimes as two hundred, and sometimes as three hundred acres; and if that was done by his procurement, or even

with his knowledge and acquiescence, it lost him his constructive possession by detaching it from the landmarks that had sustained it. No appropriator of land is suffered to escape from a false position once taken by him in relation to the revenue. A warrantee has never been suffered to carry his title back beyond the day assigned by him for the commencement of interest; and this, to teach settlers, as Mr. Justice Yeates said in Nicholson's Lessee *v.* Laferty, 3 Yeates, 272, that honesty is the best policy; and in Merchant's Lessee *v.* Milleson, Id. 73, the same principle was applied to a warrant in which the improvement was not mentioned, by holding that it gave title only from the date. There is no difference between those cases and this; for the principle is of general application, and founded not more in policy than in justice. An intruder, who disclaimed an intention to hold in opposition to the title, is not suffered to set up a possession inconsistent with his disclaimer; much more so where he disclaimed the fact of possession. Now, it is always said, that acts speak louder than words. The settler knew, not only the lines by which he professed to hold, but the quantity of land contained in them. Every man in the district knew the number of acres usually called for in a warrant; and, if knowing the number in the particular instance, he represented his claim to the assessor to be for less, he deserted the lines of the tract, and, having no other landmarks to give shape and feature to his claim, he abandoned his constructive possession altogether. To be protected for the whole, he must have claimed the whole during the necessary period; for if he released his grasp on it for an instant, the continuity of his constructive possession was broken and gone. Now, whether he winked at the oversight, or perhaps misconduct of the assessor, must be determined by the customs and usages of the country. It is the duty of the assessor to call on the owner for information in respect to the nature and quantity of his property; and the presumption is that he does it. He may act of his own head; but if he commit a mistake to the prejudice of the treasury, it is the duty of the owner, when conscious of it, to set him right. Every citizen is bound in conscience to bear his share of the public burthen; and it would be a breach of moral and social duty to avail himself of the blunder of an officer to evade it. The assessor ought to have known from the returns of the deputy surveyor into the office of the commissioners, how many acres were in the survey; and, if he assessed only a part of the tract to the settler, he was bound to assess the residue of it

as unseated, and the settler was guilty of a fraud in claiming it by adverse possession. To suffer another to pay the taxes, was held in Royer *v.* Benlow, 10 S. & R. 306, to be an admission that the party was out of possession. The *scienter* is doubtless for a jury; but from the very nature of the case it is impossible to hesitate about it; and if found against the plaintiffs, it must conclude them.

Judgment reversed, and a *venire de novo* awarded.